The People *v.* Benjamin.

---

SUPREME COURT. Albany General Term, May, 1855. *Parker, Wright* and *Harris,* Justices.

### THE PEOPLE *vs.* WARREN BENJAMIN.

On a trial for an assault and battery before a court of Special Sessions, a former trial and sentence can not be given in evidence under the plea of *not guilty*.

Under the plea of *not guilty*, the defendant can only give in evidence whatever negatives the allegations in the indictment or complaint, and matters of excuse or justification.

Where, after pleading *not guilty*, any thing occurs available as a defence, the defendant can only avail himself of it by a subsequent plea.

A conviction before a court of Special Sessions must be proved by the record of conviction, or a duly certified copy thereof, if a record has been filed; and secondary evidence of a conviction can not be received, unless it is shown that no record of conviction has been filed.

Forms of a writ of *certiorari* to bring up the proceedings and judgment from a court of Special Sessions, and of *return* thereto, and of *warrant* to bring the accused before a magistrate.

This was a *certiorari* to a court of Special Sessions. The writ of *certiorari* was as follows:

VOL. II.                 26

The People of the State of New York, to Daniel C. Stewart, one of the Justices of the Peace in and for the County of Albany, Greeting:

We having been informed that Warren Benjamin, of said county, was lately, in a court of Special Sessions held before you, convicted of having assaulted and beaten William H. Smith, and being willing for certain causes to be certified of the said conviction, and of the complaint, proceedings and judgment against the said Warren Benjamin, do command you that the said complaint, proceedings, conviction and judgment, with all things touching the same, by whatsoever name the party may be called therein, you send to our justices of the Supreme Court distinctly and plainly under your hand and seal, and that you cause this writ and the affidavit delivered to you herewith and your return, to be filed in the office of the clerk of the Supreme Court at the city of Albany, within twenty days after the service of this writ. Witness, Samuel L. Selden, Esq., Justice, the 12th day of April, 1854.

R. HARPER, *Clerk.*

PETER JOHNSON, *Att'y.*

The above writ of *certiorari* is allowed by me this 12th day of April, 1854.                    SAMUEL L. SELDEN,
*Justice of the Supreme Court.*

The application for the writ of *certiorri* was made on the affidavit of William Benjamin, who stated that he was the father of Warren Benjamin, in whose behalf the application was made, that said Warren Benjamin could not make the affidavit himself, as he was then imprisoned in the Albany Penitentiary, on the sentence which it was the object of the *certiorari* to reverse. The affidavit contained a history of the proceedings and trial before Daniel C. Stewart, justice of the peace, and a statement of the points made and relied upon to show the proceedings to be erroneous, and also the exceptions taken at the trial in the court below.

The return of the justice was as follows:

The People v. Benjamin.

*State of New York, Albany County:*

I, Daniel C. Stewart, the justice named in the annexed writ, do certify and return to the Supreme Court, that Warren Benjamin of said county, was on the 17th day of February, 1854, brought before me by virtue of a warrant hereunto annexed marked A, which was issued on a complaint made by William H. Smith on oath, I acting as a court of Special Sessions, read over the said complaint as stated in said warrant to the said Benjamin, to which he pleaded *not guilty*, the plea was duly entered by me in the minutes of the court, the said Benjamin then stated that he was not ready for trial, and made application for an adjournment until the 24th of February, at 9 o'clock A. M., which application was in accordance with the provisions contained in the 2d section of an act to amend the revised statutes in relation to courts of Special Sessions, and to regulate the police in the town of Watervliet, passed April 2d, 1850, allowed, the said Benjamin filing with me, the said justice, a bond in the penalty of three hundred dollars with William Benjamin surety as conditional for the personal appearance of the said Warren Benjamin, at a court of Special Sessions, to be held by me on the 24th day of February, at 9 o'clock in the forenoon, to answer said charge, or on a subsequent day to which said trial should be adjourned, which bond was duly approved by me, and is hereto annexed marked B.

February 24th, 9 o'clock A. M., defendant Benjamin appeared with his counsel Peter Johnson, court held open until 4 o'clock P. M., when defendant was sworn on application for adjournment to March 17th, at 9 o'clock A. M. March 17th, 9 o'clock A. M., adjourned to March 18th, A. M., 9 o'clock. March 18th, at 9 o'clock A. M., defendant appeared and was sworn on application for adjournment to April 1st, 9 o'clock A. M. April 1st, 9 o'clock A. M., defendant appeared, Andrew Alexander, Attorney for the People, made application for an attachment for Martin King, a defaulting witness, whereupon I issued an attachment returnable, April 8th, at 9 o'clock A. M., to which time said trial was adjourned. April 8th, 9 o'clock A. M. defendant, complainant and witnesses appeared. Defend-

ant stated he was ready for trial whereupon, William H. Smith, the complainant, was duly sworn and testified as follows: I reside in West Troy; know defendant Warren Benjamin; he is or was a resident of West Troy recently. On the night of the 16th of Dec. last, he grievously assaulted and beat me; made an attack on me on the covered bridge near the West Troy side cut; it was between 12 and 1 o'clock at night; I was not alone; my mother, Miss Hill, my sister, two young men and two young women of Schenectady were with me; defendant was with some five or six others; I had been to Troy and was returning home; my sister lives some ten or fifteen rods from the bridge; after the attack on the bridge, myself and those with me fled to mother's house; defendant and those with him came, rushed into the house, threw me down and kicked and struck me; some one of them said drag the damned son of a bitch out of the house and kill him; they dragged me out; defendant and John Dunn kicked me in the face several times, when at the canal bridge, they tried to throw me off the bridge into the canal; I could not tell whether the defendant tried to or not, as I could not see all behind me; heard them say " throw the son of a bitch off the bridge."

*Cross-examined.*—I have been married; can't say whether my wife is living or not; do not know where she is; have not seen her for some six years; we broke up keeping house at that time; I am a son of Miss Hill; did not board with her at the time of the affray; I boarded at the widow Potter's; I remained at my mother's some days after the fracas, and finally went to my boarding place; we had been to Troy that night; I went there after my mother and sister, they wanted me to come home with them; they were at a dance at Mr. McCoy's; when coming home, the ladies from Schenectady were with us; I think I saw defendant at the dance that night; I understood that the dance was got up for the benefit of my mother; defendant and Dunn came with us from the east end of the Troy bridge; can't say that any angry words or threats of violence were used by them towards me, until we arrived at the covered canal bridge in West Troy; the fight commenced about one

third the length of the bridge from the west end; can't positive-
ly swear that defendant struck me at the bridge; can't swear
that he did not; the first time I can swear that defendant laid
violent hands on me was after they pulled me out of the house;
and don't know which ones pulled me out except John Dunn;
defendant kicked me several times in the face, and injured me
so that my face was swollen all over; he kicked me three or
four times; the top of my head was cut through the scalp very
severely; it had to be sewed up; this wound was made in the
house; defendant was not in the habit of going to my mother's
house that I know of; several persons had hold of me while on
the walk beside defendant; defendant had not committed an
assault and battery on me previous to Dec. 16, 1853; have no
recollection of speaking to defendant before that time; I knew
him by sight; he has not assaulted me since; the one on the
16th Dec. 1853, is the only one he ever committed on me; don't
recollect that I ever swore in court that the fight was com-
menced at the bridge by defendant and continued to the house;
can't swear that I did not swear so; I think that I did not
swear so before Esquire Winne; when I went to McCoy's
where the dance was, I went up some three or four streets
then went some distance up a hill; think it was not a brick
house; it was on the left side of the road going east.

*Question.*—Do you recollect of giving in your testimony
some two or three weeks ago, on a Saturday evening, before
Justice Winne in regard to an assault and battery on you?

· This question was objected to by the people's counsel on the
following grounds: ·

I. That it is irrelevant and not material to this issue to in-
quire what witness swore to before Justice Winne, some two
weeks since.

II. That this defendant had been arrested on the 17th of
February, by virtue of a warrant regularly issued by this court
and brought into court, arraigned and plead not guilty to the
charge, and gave bail for his appearance at trial, and that any
subsequent arrest and trial could have nothing to do with this

issue, as the jurisdiction of this court could not be ousted or affected by such subsequent proceedings.

Defendant's counsel then stated his only object in examining witness in regard to what he swore to before Justice Winne, to be the laying of the groundwork for contradicting and impeaching the witness.

Examination on that point allowed for purpose of impeaching witness.

Ruling of the court excepted to by the people's counsel.

*Answer.*—I do, I had been subpenaed there; I think it was about eight o'clock in the evening when I was sworn; defendant was there; they called it a trial; I suppose it was a trial; don't know whether Esquire Winne called it a trial or not, on that evening; I swore that defendant kicked me some three or four times in the face; I think that I did not at that time say any thing about the fight at the bridge; think that I did not say that the fight commenced at the bridge, and continued to my mother's house. I think I heard Justice Winne say that Warren Benjamin was arrested and brought into court for an assault and battery committed on me in December last; Winne asked Benjamin what he had to say, guilty or not guilty; I think Benjamin said not guilty; I was sworn after that. Esquire Winne asked me what Benjamin did to me; I answered that he kicked me three or four times in the face, down at the house; I think it was all that I swore, to the assault and battery; what I then swore to is the same that I swore to here; I left immediately after being sworn. I swore on that occasion that defendant kicked me three or four times in the face on the night of the sixteenth of December last; I left McCoy's about 12 o'clock, the night of the dance.

*Direct examination resumed.*—At the time I went before Esquire Winne, on the Saturday evening spoken of, I did not go voluntarily, I was subpenaed; I do not recollect that I ever made a complaint against defendant before Esquire Winne for an assault and battery; I did not authorize any person to make a complaint for me. Defendant was then on trial before this court for the same offence, that he had been arrested for, brought into court,

The People v. Benjamin.

arraigned plead not guilty, and gave bonds for his appearance for trial on said charge; on the Saturday evening spoken of, Mr. Alexander, my counsel, objected to my swearing on that occasion, for the reason that the same matter was being investigated before this court, and Mr. Alexander also informed Esquire Winne that I had made no complaint before him, Esquire Winne, and did not wish to make one; did not wish to testify against defendant, to prosecute him before him; this was done before I was sworn. The court compelled me to testify, notwithstanding my unwillingness; I simply stated in as few words as possible what had been done; I was not cross-examined; Esquire Winne asked me the questions. I left the court immediately after I testified; don't know what occurred after I left; defendant's father, William Benjamin, and Peter Johnson, defendant's counsel, were there. No one seemed interested in the matter on the part of the people, except Esquire Winne; I would not have gone before Esquire Winne on that occasion if I had not been subpenaed, and would not have testified had I not been compelled to.

*Cross-examined.*—I mean that Esquire Winne handed me the book and told me to swear; he did not threaten to commit me for contempt.

*Ann Hill*, sworn on part of people, and testified as follows: I know defendant, Warren Benjamin; William H. Smith, complainant, is my son; I was in company with him on the evening of the 16th December last; two ladies and two gentlemen were with us; when about two thirds across the canal bridge in West Troy, I heard John Dunn say that there was going to be a fight, and he wanted a hand in; John Collossy put out his foot to stop our passing on the sidewalk of the bridge; my daughter said, " take your foot away, let us go along, and mind your own business." William H. Smith then said he wished they would let the women pass and behave themselves; defendant, Benjamin, then reached over Dunn's head, struck at Smith's and knocked his hat off; Dunn then caught Smith by the hair and knocked him in the face; I got Smith's hat and we started, I ran to Mr. Busby's for help, Busby and his wife came, and

the rowdy party on the bridge ran; we then went to the house and I went for Andrew Morrison, a constable; the crowd had rushed into the house and broken the door; soon after I came back with Morrison, the crowd had left the house; we went in and found my son, William H. Smith, badly cut, bruised and bleeding.

*Cross-examination.*—The ball at McCoy's was given for my benefit; I have done a great many hard day's work for McCoy; his house is in the city of Troy, and is called the United States Hotel; defendant was there at the dance that evening. McCoy's house is in Hoosic street, a short distance from River street in Troy. The dance was in a house opposite the United States Hotel.

*Catharine Busby,* was then sworn on part of the people, and testified as follows: I know the fracas spoken of; I was in bed with my husband on the night of the 16th of December last; we heard a man hallooing murder; we started to go down to the bridge; we saw persons running away; saw women there; saw Miss Hill there and Mary; she was hallooing murder; I went to Miss Hill's house; saw several, say four or five boys or young men breaking into the door and glass; I recognized Maloy's boy, John Dunn and Warren Benjamin, the defendant; I went as far as the door; saw Benjamin standing just in the door; the crowd all went in; saw Colossy strike Smith; he also struck me; I did not see Benjamin strike Smith while I was in the room; this was between twelve and one o'clock in the night; the boys were threatening to throw some person into the canal when at the bridge.

The people's counsel here rested.

*Martin Winne,* was then sworn on behalf of the defendant Benjamin, and testified as follows: I am a justice of the peace in and for the county of Albany; I know William H. Smith and Warren Benjamin; I went to Smith's house; he was so badly hurt that he could not get out of bed; he was the worst looking man I ever saw; I thought he would die. Miss Hill, Smith's mother, came to me, said that Smith was about to die, and that she wanted his examination taken before he died.

Smith then made a statement, charging Warren Benjamin and others with having assaulted and beaten him; this was on the morning of the 16th December, 1853; he made the statement under oath; I issued a warrant for Benjamin's arrest on the 19th of December, 1853.

*Question.*—Did you try Benjamin for that offence on the 25th day of March, 1854?

Objected to by the people's counsel on the following grounds:

I. That it was not material whether witness had tried Benjamin on that day or not, as that arrest and trial took place more than a month after defendant had been arrested and brought before this court, on a warrant regularly issued and was arraigned, plead not guilty and gave a bond for his appearance for trial, and to all intents and purposes was on trial before this court and that this court could not be deprived or ousted of its jurisdiction by any such subsequent proceedings.

II. That the witness had no legal jurisdiction of the defendant at the time of said trial, he, the defendant, being already under bonds for the said offence, and consequently said trial was null and void.

Defendant's counsel then stated that his only object in examining the witness on this point was to contradict and impeach the witness, William H. Smith. The evidence was allowed for that purpose.

*Answer.*—I tried Benjamin on the 25th day of March, 1854, on the same day on which he was arrested for assault and battery, on complaint of William H. Smith, made on the 16th day of December, 1853. Smith was sworn on the trial. He swore that Benjamin and others commenced a fight with him at the canal bridge and ended at the house.

*Question.*—Did you convict and sentence Benjamin?

Objected to by the people's counsel on the following grounds:

I. That the former trial and conviction had not been specially pleaded.

II. That it is not the proper evidence in form. It should have been the record of conviction duly filed according to law

Objection sustained. Defendant's counsel excepted to the ruling of the court.

Defendant's counsel then offered in evidence a paper, which he said was a transcript of the docket of Esquire Winne of the trial of said Benjamin, and offered to prove the correctness of the same by witness.

Objected to on the same grounds by the people's counsel and the objection was sustained by the court and defendant excepted.

Defendant's counsel then offered to prove by the witness, that upon the trial before him, the defendant was convicted and sentenced to pay a fine of $10 or in default thereof to be imprisoned in the penitentiary of the county sixty days and that said fine had been paid.

Objected to by people's counsel on the same grounds. Objection sustained and defendant excepted.

The cause was then submitted, whereupon from the evidence I found defendant guilty of said offence, and I did adjudge and order that the said defendant, Warren Benjamin, should pay a fine of $50 or in default thereof to be imprisoned in the penitentiary of the county for the term of six months. All of which is returned as by the said writ commanded.

Given under my hand and seal this 9th day of May, 1854.

DANIEL C. STEWART,
*Justice of the Peace.*

The following is a copy of the warrant annexed to the return:

*Albany County, Town of Watervliet, ss:*

To any constable of said county—Greeting: Whereas, complaint has this day been made before Daniel C. Stewart one of the justices of the peace in and for said county, by William H. Smith that one Warren Benjamin on the 16th day of December, 1853, at the town of Watervliet in said county, with force and arms did grievously assault and beat him, the said William H. Smith, and we having examined the said complainant on

The People *v.* Benjamin.

oath touching the said offence and accusation, and it appearing to us from such examination, that such offence has been committed. You are therefore hereby commanded, in the name of the people of the state of New York, forthwith to apprehend the said Warren Benjamin and bring him before the said justice, to be dealt with according to law.

Witness the said Daniel C. Stewart at West Troy in said county, this 16th of February, 1854.

DANIEL C. STEWART, *Justice.*

*Peter Johnson* for the defendant.

I. The proceedings of a Justice's Court may be proved by the justice, who is a competent witness to verify his minutes, which must be produced and can not be proved by parol. Though not technically a court of record, the proceedings are in the nature of a record. (11 *John. R.* 166.) The proceedings in any cause had before a justice may be proved by the oath of the justice. (2 *R. S.* 456, *4th ed;* 15 *Wend. R.* 237.)

II. The judgments and proceedings of inferior courts, not of record, may be proved by the minute book in which the proceedings are entered. So an examined copy of the minutes will be sufficient. If the proceedings of an inferior court are not entered in the books, they may be proved by the officer of the court, or some person conversant with the facts. (*Roscoe Cr. Ev.,* 204; 2 *Ohio R.* 17; 1 *Starkie Ev.* 303, *3d ed.*) A Justice's Court is not a court of record. (23 *Wend.* 374.)

III. The former trial and sentence might be proved under the plea of not guilty. A former recovery may be proved in trover under the general issue. (6 *Hill* 114, 2 *ib.* 478.)

IV. A magistrate's warrant continues in force until fully executed, during the term of office of the magistrate granting it. (1 *Ch. Cr. L.* 46 50; *Peake's N. P. Cases,* 234.)

*H. Harris* (District Attorney,) for the people cited, 2 *R. S.* 304; *3d ed.* § 45; 1 *Green. Ev* § 513.

*By the Court,* PARKER, J.—It is apparent in this case that

the trial before Esquire Winne, was carried on more for the benefit of the defendant than of the public. The injured person was not complainant, but was a very reluctant witness, and his counsel objected to the whole proceeding. It was evidently an attempt to get off the defendant with a very light punishment for a very atrocious offence. But it failed of its object.

Under the plea of *not guilty,* the defendant had no right to prove a former trial and sentence, nor even that a proceeding was then pending before a different tribunal for the same offence. (*Arch. Cr. Pl.* 92, 94.) The rule is that under a plea of *not guilty,* the defendant may give in evidence everything which negatives the allegations in the indictment or complaint and all matters of excuse or justification. Where a defendant wishes to avail himself of a former trial and judgment, he must plead *auterfois acquit* or *auterfois convict,* as the case may be.

In this case the defendant pleaded not guilty, and the cause was tried upon that issue alone. If, after the joining of issue, any thing occurred which might be available as a defence, the defendant could only avail himself of it by a subsequent plea, and by presenting a new issue for trial. That was not done. and the evidence of the trial and sentence before Esquire Winne, was properly excluded upon the merits.

We think the objection to the species of evidence, by which the facts were offered to be proved, was also well taken. The record of conviction, if it had been filed, or a duly certified copy of it, would have been the proper evidence. (2 *R. S.* 717, § 38, 39, 40.) If it had been shown that no record of conviction had been filed, the secondary evidence might have been received. (2 *R. S.* 739, § 10: *Barb. Cr. L.* 407, 2d ed.)

The judgment must be affirmed.